**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MINNESOTA**

|  |  |
|---|---|
| In re:<br><br>Jacon, LLC<br><br>      Debtor. | Case No. 23-31873<br><br>Chapter 11 |

**PLAN OF REORGANIZATION DATED APRIL 15, 2024**

The above Debtor, Jacon, LLC (hereinafter "Jacon") proposes the following Plan of Reorganization (the "Plan") for approval by the creditors and other interested parties. Creditors and other parties in interest should refer to the related Disclosure Statement for the Chapter 11 Plan of Reorganization for (i) a discussion of the Debtor's history and business operations; (ii) a summary and analysis of this Plan; (iii) a summary of potential risk factors relating to this Plan; and (iv) a discussion of other matters relevant to the Debtor's reorganization in general and this Plan in particular. Subject only to the restrictions and requirements set forth in relevant provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (including 11 U.S.C. § 1127 and Fed. R. Bankr. P. 3019), the Debtor reserves all available rights to amend, alter, revise, modify, revoke, or withdraw this Plan prior to its substantial consummation.

**<u>Article I</u>**
**Summary**

This Plan under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtor from cash flow from operations and future income.  This Plan provides for a total of eleven (11) classes, seven (7) secured classes, two (2) priority classes, one (1) allowed general unsecured class, and one (1) class of equity security holders. Unsecured creditors holding allowed claims will receive distributions.  This Plan also provides for the payment of administrative and

priority claims to the extent permitted by the Code or the claimant's agreement.

All creditors and equity security holders should refer to thoroughly read and review this Plan for information regarding the precise treatment of their claims. A disclosure that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. If you do not have an attorney, you may wish to consult one.

**Article II**
**Classification of Claims and Interests**

2.01    Class 1.  The lien claim of Platinum Bank (hereinafter "Platinum").

2.02    Class 2.  The lien claims of the U.S. Small Business Administration (hereinafter "SBA").

2.03    Class 3.  The lien claims of the Ramsey County Tax Services ("Ramsey County").

2.04    Class 4.  The lien claims of John Deere Construction & Forestry Company ("John Deere").

2.05    Class 5.  The lien claims of the Ally Bank.

2.06    Class 6.  The lien claims of the AmeriCredit Financial Services, Inc. dba GM Financial ("GM Financial").

2.07    Class 7.  The lien claims of the U.S. Bank, N.A. dba U.S. Bank Equipment Finance ("U.S. Bank"), to the extent allowed as a secured claim under 506 of the Code.

2.08    Class 8.  The lien claims of the Minnesota Laborers Fringe Benefit Funds ("MN Laborers")

2.09    Class 9.  The lien claims of the Operating Engineers Local #49 Fringe Benefit Funds ("Local #49").

2.10    Class 10.  All general unsecured Claims allowed under § 502 of the Code.

2.11    Class 11.  Equity interests (membership units) of the Debtor.

**Article III**
**Treatment of Administrative Expense Claims, U.S. Trustees Fees, and Priority Tax Claims**

3.01    Unclassified Claims.  Under § 1123(a)(1), administrative expense claims are not in a class.

3.02    Administrative Expense Claims.  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    Priority Tax Claims.  IRS Priority Claim (see Claim No. 12 (amended)): $51,200.58, will be paid in full, at eight percent (8.0%) interest, in thirty-six (36) installments of $1,604.44 per month with the first payment due on the Effective Date, and future payments due on the 1st business day of each month hereafter.  The IRS may apply such payment in accordance with its own customary practice.

If the Debtor defaults on any payment due to the IRS and such default continues for 45 days or more, the outstanding amount due to the IRS shall become due and payable immediately, and the same may be collected through the administrative collection provisions of the Internal Revenue Code, as applicable.

3.04    United States Trustee Fees.  All fees required to be paid by 28 U.S.C. section 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the Effective Date.  All U.S. Trustee Reports will be prepared and

filed by the Debtor while the case is pending in the Bankruptcy Court.

3.05   <u>Real Estate Tax Claims</u>.  The real estate taxes for 2023 due and owing on the Property will be paid per the terms in Article IV below.

**Article IV**
**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

4.01   Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1—Secured Claims of Platinum Bank | Impaired | The Class 1 Claim will be paid in full, in cash, starting on the Effective Date and continuing thereafter on a monthly basis, on the first business day of each calendar month, until said Class 1 Claim is paid in full, as follows: (a) for a period of one hundred eighty (180) months from the Effective Date at the annual interest rate of 6.0%, with a principal and interest payment of $29,534.99 per month, on an "amortizing" basis of principal and interest, on a fifteen year amortization schedule. Except as modified by this Plan all other terms and conditions of the documents evidencing the loan made by the Bank to Debtor shall remain in full force and effect. The Debtor and Platinum will work together to determine the balance owing after the application of the asset sale proceeds, and make any necessary adjustments to the monthly payment.  The holder of the Class 1 Claim shall retain its lien secured by the assets of the Debtor. |
| Class 2 —Secured Claims – U.S. Small Business Administration | Impaired. | The Class 2 Claim will be paid in full, in cash, starting on the Effective Date and continuing thereafter on a monthly basis, on the first business day of each calendar month, until said Class 2 Claim is paid in full, as follows: (a) for a period of one hundred eighty (180) months from the Effective Date at the annual interest rate of 3.75%, with a principal and interest payment of $2,204.42 per month, on an "amortizing" basis of principal and |

4

| | | |
|---|---|---|
| | | interest, on a fifteen year amortization schedule. Except as modified by this Plan all other terms and conditions of the documents evidencing the loan made by the SBA to Debtor shall remain in full force and effect. The holder of the Class 2 Claim shall retain its lien secured by the assets of the Debtor. |
| Class 3 – Secured Claim of Ramsey County Tax Services | Not Impaired. | Class 3 will be paid in full, with interest, once the pending motion to sell the Debtor's real estate is approved by the court, and the closing of the transaction occurs. |
| Class 4 – Secured Claim John Deere Construction & Forestry Company | Impaired | The Class 4 Claim will be paid in full, in cash, starting on the Effective Date and continuing thereafter on a monthly basis, on the first business day of each calendar month, until said Class 4 Claim is paid in full, as follows: (a) for a period of sixty (60) months from the Effective Date at the annual interest rate of 4.95%, with a principal and interest payment of $1,771.17 per month, on an "amortizing" basis of principal and interest, on a five year amortization schedule. Except as modified by this Plan all other terms and conditions of the documents evidencing the loan made by John Deere to Debtor shall remain in full force and effect. The holder of the Class 4 Claim shall retain its lien against the Compactor. |
| Class 5 – Secured Claim of Ally Bank | Impaired | The Class 5 Claim will be paid in full, in cash, starting on the Effective Date and continuing thereafter on a monthly basis, on the first business day of each calendar month, until said Class 5 Claim is paid in full, as follows: (a) for a period of sixty (60) months from the Effective Date at the annual interest rate of 8.99%, with a principal and interest payment of $1,257.17 per month, on an "amortizing" basis of principal and interest, on a five year amortization schedule. Except as modified by this Plan all other terms and conditions of the documents evidencing the loan made by Ally Bank to Debtor shall remain in full force and effect. The holder of |

| | | |
|---|---|---|
| | | the Class 5 Claim shall retain its lien against the Silverado 2500. |
| Class 6 – Secured Claim of AmeriCredit Financial Services, Inc., dba GM Financial | Impaired | The Class 6 Claim will be paid in full, in cash, starting on the Effective Date and continuing thereafter on a monthly basis, on the first business day of each calendar month, until said Class 6 Claim is paid in full, as follows: (a) for a period of sixty (60) months from the Effective Date at the annual interest rate of 6.99%, with a principal and interest payment of $1,089.17 per month, on an "amortizing" basis of principal and interest, on a five year amortization schedule. Except as modified by this Plan all other terms and conditions of the documents evidencing the loan made by GM Financial to Debtor shall remain in full force and effect. The holder of the Class 6 Claim shall retain its lien against the Silverado 3500. |
| Class 7 – Partially Secured Claim of U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance | Impaired. | The Class 7 Claim will be paid $200,000.00 in cash, starting on the Effective Date and continuing thereafter on a monthly basis, on the first business day of each calendar month, until said Class 7 Claim is paid in full, as follows: (a) for a period of sixty (60) months from the Effective Date at the annual interest rate of 5.00%, with a principal and interest payment of $3,774.25 per month, on an "amortizing" basis of principal and interest, on a five year amortization schedule. Except as modified by this Plan all other terms and conditions of the documents evidencing the loan made by U.S. Bank to Debtor shall remain in full force and effect. The holder of the Class 7 Claim shall retain its lien against the Peterbilt 567. |
| Class 8 – Priority Claim – Minnesota Laborers Fringe Benefit Funds | Impaired. | The Debtor owed to MN Laborers as of the Petition Date a priority claim in the amount of $98,176.98, and an unsecured claim of $16,755.17 (see Proof of Claim No. 34).  MN Laborers' priority claim will be paid in cash, starting on the Effective Date and continuing thereafter on a monthly basis, on the first |

| | | |
|---|---|---|
| | | business day of each calendar month, until said Class 8 Claim is paid in full, as follows: thirty-six (36) monthly payments in the amount of $2,727.14. MN Laborers' unsecured claim will be treated in Class 10 below. Except as modified by this Plan all other terms and conditions under the contract between the Debtor and MN Laborers shall remain in full force and effect. |
| Class 9 – Priority Claims – Operating Engineers Local #49 Fringe Benefit Funds | Impaired. | The Debtor owed to Local #49 as of the Petition Date a priority claim in the amount of $90,125.97, and an unsecured claim of $200,823.62 (*see* Proof of Claim No. 37). Local #49's priority claim will be paid in cash, starting on the Effective Date and continuing thereafter on a monthly basis, on the first business day of each calendar month, until said Class 9 Claim is paid in full, as follows: thirty-six (36) monthly payments in the amount of $2,503.50. Local #49's unsecured claim will be treated in Class 10 below. Except as modified by this Plan all other terms and conditions under the contract between the Debtor and Local #49 shall remain in full force and effect. |
| Class 10 – Allowed General Unsecured Creditors | Impaired. | In full satisfaction of the allowed general unsecured claims, each Holder of a Class 10 claim shall receive its pro rata share of $60,000.00 per year, with the first payment being on the one year anniversary of the Effective Date, and two (2) more payments on the second and third year anniversaries of the Effective Date, for a total of three payments equaling $180,000.00. The percentage payment to each Class 10 creditor is approximately 5.0%. |
| Class —Equity Security Holders | Unimpaired. | Upon a capital contribution to the Estate in the amount of $5,000.00, the Equity Security Holders will retain their membership interests in the Debtor subsequent to confirmation of the Plan. |

7

Classes 1, 2, 4, 5, 6, 7, 8, 9 and 10 are Impaired under this Plan and are entitled to vote for or reject the Plan. Classes 3 and 11 are not impaired under this Plan.

## Article V
## Allowance And Disallowance Of Claims

5.01    Disputed Claim.    A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim.    No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

## Article VI
## Provisions for Executory Contracts and Unexpired Leases

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor assumes the following executor contracts and/or unexpired leases:

CapFirst Equipment Finance (*no claim filed*);

Caterpillar Financial (*see* Claim No. 33); and

Komatsu Financial (*see* Claim No. 31).

(b)    The Debtor will be conclusively deemed to have rejected all executor contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the "Effective Date of this Plan."

## Article VII
**Means for Implementation of the Plan**

The Debtor intends to make payments to the creditors from continued business operations through cash flow and future income. The Debtor will continue to be managed and operated by Jason Jacobsen. Inquiries regarding payments due under the Plan can be directed to Jason Jacobsen at the telephone number 651-426-8561.

## Article VIII
**Supervision of the Plan**

8.01. Jurisdiction. Until the Chapter 11 Cases is closed, the Court shall retain the fullest and most extensive jurisdiction that is permissible, including that necessary to ensure that the purposes and intent of this Plan are carried out and to hear and determine all claims that could have been brought before the entry of the Confirmation Order. Except as otherwise provided for in this Plan, the Court shall retain jurisdiction to hear and determine all claims against the Debtor and to adjudicate and enforce all causes of action that may exist on behalf of the Debtor. Nothing contained herein shall prevent the Debtor from taking such action as may be necessary to enforce or prosecute any cause of action that the Debtor have or may have and that may not have been enforced or prosecuted by the Debtor, which cause of action shall survive confirmation of this Plan and shall not be affected thereby except as specifically provided herein.

8.02. General Retention. Following confirmation of this Plan, the Court shall also retain jurisdiction for the purposes of classifying any claim, re-examining claims that have been allowed for purposes of voting and determining such objections as may be filed with the court with respect to any claim. The failure by the Debtor to object to or examine any claim for the purposes of voting shall not be deemed a waiver of the right of the Debtor to object to or reexamine such claim, in whole or in part.

8.03. <u>Specific Purposes</u>. In addition to the foregoing, after confirmation of the Plan the court shall retain jurisdiction to the maximum extent legally permissible, including for the following specific purposes:

(a) to modify this Plan after confirmation, pursuant to the Code;
(b) to correct any defect, cure any omission or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan, including the adjustment of the date(s) of performance under this Plan and any documents related thereto so that the intended effect of this Plan and such other documents may be substantially realized thereby;
(c) to enforce and interpret the terms and conditions of this Plan;
(d) to enter such orders including, but not limited to, injunctions as are necessary to enforce the title, rights and powers of the Debtor;
(e) to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtor, or its estate arising prior to the Effective Date or relating to the period of administration of the Chapter 11 Cases;
(f) to hear and determine all applications for compensation of professionals and reimbursement of expenses under Sections 330, 331 or 503(b) of the Code;
(g) to hear and determine any causes of action arising during the period from the date a petition is filed through the Effective Date, or in any way related to this Plan or the transactions contemplated hereby, against the Debtor, the Creditors Committee or their respective officers, directors, stockholders, members, attorneys, financial advisors, representatives and agents;
(h) to determine any and all motions pending on confirmation for the rejection, assumption or assignment of executory contracts or unexpired leases and the allowance of any claim resulting therefrom;
(i) to determine such other matters and for such other purposes as may be provided in the Confirmation Order;
(j) to consider and act on the compromise and settlement of any claim against the interest in the Debtor or its estate;
(k) to determine all questions and disputes regarding title to the assets of the Debtor or its estate;
(l) to enter such orders as are necessary to implement and enforce any other orders entered in the Chapter 11 Cases; and
(m) to hear and determine any other matters related hereto and not inconsistent with the Code.

## Article IX
## General Provisions

9.01    Definitions and Rules of Construction.  The definitions and rules of construction set for in 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.  Additionally, any defined terms used in the Disclosure Statement have the same meaning if used in this Plan.

9.02    "Effective Date" of Plan.  "Effective Date" means the twentieth (20th) calendar day after the Confirmation Date; or, an earlier date declared by the Debtor in its sole discretion. If a stay of the confirmation order is in effect on the Effective Date, the Effective Date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

9.03    Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

9.04    Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.05    Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), or the laws of the State of Minnesota govern this Plan and any agreements, documents and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## Article X
## Plan Confirmation

10.01. Conditions Precedent to Confirmation. The following are conditions to the entry of the Confirmation Order unless such conditions, or any one of them, have been satisfied or duly

waived pursuant to Section 9.02 of this Plan: (i) the Confirmation Order is the standard confirmation order used in this district; and (ii) this Plan shall not have been materially amended, altered or modified from the most recent version filed by the Debtor, unless such material amendment, alteration or modification has been made in accordance with Section 10.02 of this Plan.

10.02. <u>Waiver of Conditions to Confirmation</u>. The conditions to Confirmation may be waived in whole or in part at any time by the Debtor without an order of the Court.

10.03. <u>Cramdown</u>. The Debtor requests confirmation under Section 1129(b) of the Bankruptcy Code with respect to any impaired class that has not accepted or is deemed not to have accepted this Plan.

10.04. <u>Effect of Confirmation</u>.

10.04.01. Title and Vesting of Assets. Platinum Bank and the Small Business Administration shall retain its prepetition real estate liens on all of its collateral and such lien shall not be affected by the Plan. All property of the Debtor and its estate is dealt with by this Plan; therefore, on the Effective Date, to the full extent allowed by section 1141(b) of the Bankruptcy Code, all property of the Debtor and its respective estates shall vest in the reorganized Debtor and such property shall be free and clear of all liens, encumbrances, claims, and interests of creditors and equity security holders, except to the extent the Plan explicitly provides that such liens, encumbrances, claims, or interests are retained. From and after the Effective Date, the Debtor may operate, use, acquire, and dispose of property in accordance with the Plan, free and clear of any restrictions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided in this Plan.

10.04.02. *Discharge*. Except as otherwise provided in this Plan, confirmation of this Plan discharges, waives, and releases the Debtor from any debt that arose before the Confirmation Date and any debt of a kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, regardless of whether or not proof of the claim based on such debt was filed or deemed filed under Section 501 of the Bankruptcy Code, such Claim is allowed under Section 502 of the Bankruptcy Code, or the holder of such claim has accepted the Plan. The payments of, distributions on account of, or treatments of claims in this Plan are deemed to satisfy in full all claims.

**10.04.03.** *Injunctions Relating to the Debtor.* Except as provided in this Plan, as of the Effective Date and subject to its occurrence, all persons that have held, currently hold, or may have asserted a claim, a Cause of Action or other debt, liability, interest, or other right of a holder of an equity interest that is discharged, released, or terminated pursuant to the Plan, are hereby permanently enjoined from commencing or continuing against the Debtor, in any manner or in any place, any: action or other proceeding; enforcing, collecting, or recovering in any manner any judgment, award, decree, or order; creating, perfecting, or enforcing any lien or encumbrance; and/or asserting a set-off, right of subrogation, or recoupment of any kind against any debt, liability, or obligation.

Respectfully submitted,
**JACON, LLC**

Dated: April 15, 2024

By: _____
Jason Jacobsen, President

Dated: April 15, 2024

/e/ John D. Lamey III

John D. Lamey III, Esq. (#312009)
**LAMEY LAW FIRM, P.A.**
980 Inwood Avenue North
Oakdale, MN 55128
Telephone: (651) 209-3550
Facsimile: (651) 789-2179
*Attorneys for the Debtor*